FILED

JUL 3 0 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CV 18 4596    LB

DANIEL VERDUZCO , T-45537
(Name of Plaintiff)                          (Case Number)

P.O. BOX 3456, CORCORAN, CA. 93212
(Address of Plaintiff)                                (PR)

vs.                                    COMPLAINT

C.E. DUCART, Et. AL.,


(Names of Defendants)

I. Previous Lawsuits:

    A. Have you brought any other lawsuits while a prisoner:   ☐ Yes   ☑ No

    B. If your answer to A is yes, how many?: _____ Describe the lawsuit in the space
below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper
using the same outline.)

        1. Parties to this previous lawsuit:

        Plaintiff _____

        Defendants _____

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983        Rev'd 5/99

1

2. Court (if Federal Court, give name of District; if State Court, give name of County)

_____

3. Docket Number _____

4. Name of judge to whom case was assigned _____

5. Disposition  (For example: Was the case dismissed? Was it appealed? Is it still pending?)

_____

6. Approximate date of filing lawsuit _____

7. Approximate date of disposition _____

## II. Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution?   ☑ Yes      ☐ No

B. Have you filed a grievance concerning the facts relating to this complaint?

                                                      ☑ Yes      ☐ No

    If your answer is no, explain why not _____

_____

C. Is the grievance process completed?   ☑ Yes      ☐ No

## III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank.  Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant _C.E. DUCART  (WARDEN)_____ is employed as _PELICAN BAY STATE PRISON_
_____ at _CRESCENT, CITY, CALIFORNIA  95532_

B. Additional defendants _(SEE ATTACHED COMPLAINT)_____

_____
_____
_____
_____
_____
_____

IV.   Statement of Claim

(State here as briefly as possible the <u>facts</u> of your case.  Describe how each defendant is involved, including dates and places.  Do not give any legal arguments or cite any cases or statutes.  Attach extra sheets if necessary.)

_(SEE ATTACHED COMPLAINT )_

_____

_____

_____

_____

_____

_____

V. Relief.

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

_(SEE ATTACHED COMPLAINT)_

_____

_____

_____

_____

_____

_____

Signed this _22_ day of _JULY_____, 20_18___.

_____
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

_JULY 22, 2018_____          _____
(Date)                                          (Signature of Plaintiff)

3

DANIEL VERDUZCO, T-45537

CORCORAN, CALIFORNIA 93212

IN THE UNITED STATES DISTRICT COURT

NORTHERN
FOR THE ~~WESTERN~~ DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| DANIEL VERDUZCO, T-45537 | CASE No.: |
| PLAINTIFF, | |
| Vs. | COMPLAINT |
| C.E. DUCART (JOHN DOES) | 42 U.S.C. SECTION 1983 |
| DEFENDANT(S) Et. Al., | |

### CLAIMS

1.     PLAINTIFF VERDUZCO CONTENDS THAT PELICAN BAY STATE PRISON (PBSP) EMPLOYEES ACTED WITH DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED BY DENY PLAINTIFF TEMPORARY PAIN MEDICATION, THUS, SUBJECTING HIM TO UNNECESSARY PAIN AND SUFFERING.

2.     PLAINTIFF VERDUZCO CONTENDS THAT PBSP EMPLOYEES ACTED WITH GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE TO A SERIOUS MENTAL HEALTH NEED BY FAILING TO TAKE ANY REASONABLE ACTION TO PREVENT INJURY WHILE ON SUICIDE PRECAUTION.

3.     PLAINTIFF VERDUZCO CONTENDS THAT MULTIPLE EMPLOYEES AT PBSP SUBJECTED HIM TO A CAMPAGINIMENT OF HARRACSMENT (RETALIATION) FOR FILING GRIEVANCES CHALLENGING STAFF MISCONDUCT AT PBSP.

### STATEMENT OF FACTS

4.     ON JULY 28, 2016, PLAINTIFF WAS SUFFERING FROM SEVERE ANXIETY AND DEPRESSION. OUT OF DESPARATION AND FEELING HOPELESS PLAINTIFF CUT HIS TONGUE THROUGH AND THROUGH, DOWN THE CENTER SPLITTING IN TWO. PLAINTIFF CUT HIS ABDOMEN AND MADE A NOOSE AS HE DEEMED SUICIDE. PLAINTIFF WAS THEN ADMITTED INTO A MENTAL HEALTH CRISIS BED (MHCB) ABOUT 2:00 A.M ON JULY 28, 2016 FOR SUICIDE IDEALATION AND SELF-INJURIOUS BEHAVIOR. PLAINTIFF WAS IN EXCRUCIATING PAIN AND CONTINUED TO PLEAD FOR PAIN MEDICATION OR ANYTHING TO NUMB HIS TONGUE. PLAINTIFF WAS TREATED AS A NUISANCE AND NOT A PATIENT, HE WAS ONLY GIVEN OVER THE COUNTER (OTC) TYLENOL WHICH HAD NO EFFECT IN ALLEVIATING PAIN. PLAINTIFF WAS EXAMINED BY PHYSICIAN ASSISTANT (PA) THOMAS, L. AROUND 8:00 A.M. PLAINTIFF DESCRIBED HIS PAIN AS SEVERE AND PLEADED FOR PAIN MEDICATION AND A NUMBING SOLUTION TO NUMB HIS TONGUE DURING MEALS SO THAT HE CAN CONSUME HIS MEALS WITHOUT SUBSTANTIAL PAIN AND DISCOMFORT. PLAINTIFF TONGUE WAS SPLIT IN TWO HALFS, THROUGH AND THROUGH, ONE AND ONE HALF INCHES IN LENGTH WITH EXPOSED RAW FLESH. THOMAS, L. (PA) PLAINTIFFS PRIMARY CARE PROVIDER DENIED PLAINTIFF ADEQUATE PAIN MEDICATION, A SOFT DIET, OR A NUMBING SOLUTION TO ALLEVIATE SEVERE PAIN. THOMAS, L. (PA) TOLD PLAINTIFF THAT HE DID NOT APPEAR TO BE IN PAIN AND HE DID THIS TO HIMSELF SO PLAINTIFF CAN DEAL WITH THE PAIN. FOR (36) HOURS PLAINTIFF WAS FORCED TO CONSUME ALL MEALS IN SEVERE PAIN WITH HIS TONGUE SPLIT IN TWO AND RAW FLESHED FLESH EXPOSED —— AND

prescribed nothing more than OTC Tylenol for pain management which was ineffective . (36) hours later plaintiff underwent a procedure to reconnect his tongue . plaintiff received over 22 stitches . Hechanova , (SDDS) prescribed a lidocaine rinse post op which was given to plaintiff before all meals to numb his tongue ; so that he can consume all meals without pain and discomfort . Thomas , L. (PA) prescribed nothing but OTC Tylenol for a serious medical need which forced plaintiff to consume meals in agonizing pain with a wound one and one half inches in length through and through . plaintiff was in excruciating pain for 36 hours . Thomas , L. (PA) noted with deliberate indifference to a serious medical need when one examines the nature of the wound and the degree of plaintiffs pain . plaintiff filed an appeal against Thomas , L. (PA) for deliberate indifference to pain and suffering ; retaliation . plaintiffs appeal was treated as a routine appeal and not a staff complaint . plaintiff was interviewed by S. Yerpah , supervising registered nurse II for this appeal whom retains a lower medical position than Thomas , L. (PA) .

5.      on August 17, 2016 , plaintiff had been admitted in a MHCB for 21 consecutive days following the incident from July 28 , 2016 . plaintiff was on suicide precaution which mandates correctional treatment center (CTC) personnel to perform staggered checks not to exceed 15 minutes and no less than five checks per hour . the purpose of these checks are to ensure the wellness of the inmate .

6.      A MHCB constitutes as the highest level of mental health care that an inmate can receive at the institutional level . they focus on enhanced treatment for inmates actively suicidal or high risk of attempting self- injurious behavior . the overall objective is to closely monitor inmates in a safe enviornment to prevent suicide and self- injurious behavior .

7.      on August 17, 2016 , around 2:20 p.m. during a mental health assessment plaintiff informed Brown , P. (PhD) that plaintiff had not been fed by transportation . Brown , P. (PhD) advised plaintiff that he would convey this to custody . plaintiff continued to inform mental health , medical , and custody personnel that he had not been fed . at about 2:40 p.m. , plaintiff was housed in infirmary cell 179 on suicide precaution.

8.      plaintiff was growing distraught and anxious because he was not fed . at 3:00 p.m. , plaintiff boarded up (completely covered all cell windows and destructing any view of himself or inside of his cell). during staggered checks CTC personnel had no visual of plaintiff and failed to take any action although plaintiff was on suicide precaution i.e. , high risk of attempting self-injurious behavior .

9.      plaintiffs distress and anxiety progressed . at 3:20 p.m. , plaintiff began to claw at his tongue with his bare finger nails rupturing tissue until he bleed profusely . after engaging in self- injurious behavior plaintiff took his fingers dipped them into the blood and wrote from floor to ceiling on all three cell walls detailing staffs misconduct .

-2-

PLAINTIFF WROTE ON THE ENTIRE METAL BUNK FRAME IN BLOOD, TOO. PLAINTIFF WAS LEFT IN A MANIC STATE OF DISTRESS BETWEEN 2½ AND 3 CONTINUOUS HOURS. DESPITE CTC STAFF'S INABILITY TO VISUALLY SEE PLAINTIFF, AT NO TIME DID CTC STAFF TAKE IMMEDIATE ACTION TO ATTEMPT TO DEESCALATE HIS ANXIETY AND MANIC STATE OF DISTRESS. PLAINTIFF WAS TREATED AS A NUISANCE, AND THE APPARENT CONSENSUS WAS TO LEAVE PLAINTIFF UNSUPERVISED TO HIS OWN PERIL ON SUICIDE PRECAUTION RESULTING IN A INJURY ON HIS TONGUE NECESSITATING FOUR STITCHES TO CLOSE ; PLAINTIFF CELL WAS COVERED IN BLOOD, TOO. DURING THE HOURS THAT PLAINTIFF WAS BOARDED UP, HE WAS ASKED IF HE WAS OKAY. PLAINTIFF WOULD YELL NO AND STATE ; " HOW ARE THEY GOING TO EXPLAIN WHAT THEY FIND ". CTC STAFF WERE AWARE OF PLAINTIFFS MENTAL HEALTH HISTORY. PLAINTIFF SOUGHT REFUGE IN A MHCB TO PREVENT SUICIDE AND SELF-INJURIOUS BEHAVIOR, NOT TO BE LEFT UNSUPERVISED IN A RECKLESS MANNER WHILE IN A MANIC STATE OF DISTRESS ON SUICIDE PRECAUTION.

10.       KIMBRELL, G. (CNA) CONDUCTED STAGGERED CHECKS ON AUGUST 17, 2016, AT 3:00 P.M., 3:15 P.M., AND 3:29 P.M., WAS RESPONSIBLE FOR PLAINTIFFS WELLNESS. HAD KNOWLEDGE THAT PLAINTIFF WAS HIGH RISK OF ATTEMPTING SELF-INJURIOUS BEHAVIOR ; HAD NO VISUAL OF PLAINTIFF AND FAILED TO TAKE ANY ACTION, LEAVING PLAINTIFF UNSUPERVISED TO HIS OWN DETRIMENT ON SUICIDE PRECAUTION RESULTING IN INJURY. HENCE, DEMONSTRATING GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE TO A SERIOUS MENTAL HEALTH NEED.

11.       VAUGHT, P. (PT) CONDUCTED STAGGERED CHECKS ON AUGUST 17, 2016, AT 3:36 P.M., 3:42 P.M., 4:00 P.M., 4:41 P.M., 4:28 P.M., 4:30 P.M., 4:34 P.M., 4:46 P.M., 5:00 P.M., 5:15 P.M. 5:27 P.M., 5:35 P.M., 5:45 P.M., 6:06 P.M., 6:15 P.M. AND 6:25 P.M. WAS RESPONSIBLE FOR PLAINTIFFS WELLNESS. HAD KNOWLEDGE THAT PLAINTIFF WAS HIGH RISK OF ATTEMPTING SELF -INJURIOUS BEHAVIOR, HAD NO VISUAL OF PLAINTIFF AND FAILED TO TAKE ANY REASONABLE ACTION, LEAVING PLAINTIFF UNSUPERVISED TO HIS OWN DETRIMENT ON SUICIDE PRECAUTION RESULTING IN INJURY. FURTHERMORE, AT 6:06 P.M. VAUGHT, P. (PT) TOLD PLAINTIFF IF SHE CAN VISUALLY SEE HIM. PLAINTIFF DECLINED. VAUGHT, P. (PT) THEN TOLD PLAINTIFF IF SHE CAN AT LEAST SEE HIS EYES. PLAINTIFF RELUCTANTLY AGREED AND SHIFTED ENOUGH TOILET PAPER TO THE SIDE USING HIS FINGERS TO ONLY REVEAL HIS EYES, HOWEVER, DUE TO HIS MANIC STATE HE FORGOT THAT HIS FINGERS WERE COVERED IN BLOOD. VAUGHT, P. (PT), NOTICED THE BLOOD ON PLAINTIFFS FINGERS BUT (19) MINUTES ELAPSED BEFORE A MEDICAL EMERGENCY WAS DECLARED AT 6:25 P.M. HENCE, DEMONSTRATING GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE TO A SERIOUS MENTAL HEALTH NEED.

12.       GEIGER, T. (RN) HAD KNOWLEDGE THAT PLAINTIFF WAS HIGH RISK OF ATTEMPTING SELF-INJURIOUS BEHAVIOR, BANGED ON PLAINTIFFS DOOR MORE THAN ONCE, HAD NO VISUAL OF PLAINTIFF AND TOLD PLAINTIFF, "YOU SOUND ALIVE". SHE TOOK NO REASONABLE ACTION, LEAVING PLAINTIFF UNSUPERVISED TO HIS OWN DETRIMENT IN A MANIC STATE OF DISTRESS ON SUICIDE PRECAUTION RESULTING IN INJURY. THEN, AT 6:05 P.M., GEIGER, T. (RN) HAD BEEN INFORMED THAT BLOOD WAS SEEN ON PLAINTIFFS FINGERS BUT FAILED TO TAKE ANY REASONABLE ACTION. DURING PLAINTIFFS INTAKE PROCESS GEIGER, T. (RN) FALSIFIED MENTAL HEALTH RECORDS STATING THAT PLAINTIFF HAD NO PREVIOUS SUICIDE ATTEMPTS. SHE ALSO MANIPULATED RECORDS TO MISREPRESENT EVENTS AND CONCEAL THE

-3-

BLATANT DISREGARD FOR PLAINTIFFS WELLNESS ON AUGUST 17, 2016. OVERALL, DEMONSTRATING GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE TO A SERIOUS MENTAL HEALTH NEED.

13. BROWN, P. (PHD) AUTHORIZED THE ORDER PLACING PLAINTIFF ON SUICIDE PRECAUTION, WAS AWARE THAT PLAINTIFF WAS HIGH RISK OF ATTEMPTING SELF-INJURIOUS BEHAVIOR. HE HAD KNOWLEDGE AT 3:37 P.M. THAT PLAINTIFF WAS IN A MANIC OF DISTRESS AND AND BOARDED UP. HE MADE NO ATTEMPT TO ENGAGE PLAINTIFF IN AN ENDEAVOR TO DEESCALATE PLAINTIFFS DISTRESS. HE TOOK NO REASONABLE ACTION, LEAVING PLAINTIFF IN A MANIC STATE OF DISTRESS, UNSUPERVISED TO HIS OWN DETRIMENT ON SUICIDE PRECAUTION RESULTING IN INJURY. THUS, DEMONSTRATING GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE TO A SERIOUS MENTAL HEALTH NEED.

14. JENSEN, L. (PSYD) WAS AWARE THAT PLAINTIFF WAS HIGH RISK OF ATTEMPTING SELF-INJURIOUS BEHAVIOR. MORE THAN ONCE PLAINTIFF WAS INFORMED THAT JENSEN, L. (PSY.D) HAD BEEN NOTIFIED THAT HE WAS BOARDED UP. SHE KNEW THAT PLAINTIFF HAD NOT BEEN VISUALLY SEEN YET TOOK NO ACTION NOR MADE ANY ATTEMPT TO ENGAGE PLAINTIFF IN AN ENDEAVOR TO DEESCALATE HIS DISTRESS. SHE ALLOWED PLAINTIFF TO REMAIN UNSUPERVISED IN A MANIC STATE OF DISTRESS TO HIS OWN DETRIMENT ON SUICIDE PRECAUTION RESULTING IN INJURY. SHE WAS NOTIFIED AT 6:05 P.M. THAT BLOOD WAS SEEN ON PLAINTIFFS FINGERS AND TOOK NO IMMEDIATE ACTION. A FULL (10) MINUTES ELAPSED BEFORE SHE APPROACHED PLAINTIFFS' DOOR AT 6:15 P.M., HAD NO VISUAL OF PLAINTIFF AND LEFT. AN ADDITIONAL (10) MINUTES ELAPSED BEFORE A MEDICAL EMERGENCY WAS DECLARED AT 6:25 P.M. OVERALL, JENSEN, L. (PSY.D) ACTED WITH GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE TO A SERIOUS MENTAL HEALTH NEED.

15. GRAVES (SGT.) WAS AWARE THAT PLAINTIFF WAS HIGH RISK OF ATTEMPTING SELF-INJURIOUS BEHAVIOR. DURING THE 2½ THROUGH 3 CONTINUOUS HOURS THAT PLAINTIFF WAS BOARD UP, GRAVES (SGT.) WAS ROUTINELY NOTIFIED BY CTC STAFF THAT NO ONE HAD VISUALLY SEEN PLAINTIFF. HE TOOK NO ACTION OR REPORTED THIS TO HIS SUPERVISORS. MORE THAN ONCE HE BANGED ON PLAINTIFFS DOOR AT THE URGING OF CTC STAFF BUT TOOK NO ACTION BEYOND THAT, LEAVING PLAINTIFF IN A MANIC STATE OF DISTRESS UNSUPERVISED TO HIS OWN DETRIMENT ON SUICIDE PRECAUTION RESULTING IN INJURY. GRAVES (SGT.) WAS INFORMED AT 6:05 P.M. THAT BLOOD WAS SEEN ON PLAINTIFFS FINGERS BUT HE TOOK NO IMMEDIATE ACTION, AND A FULL (20) MINUTES ELAPSED BEFORE A MEDICAL EMERGENCY WAS DECLARED AT 6:25 P.M. MOREOVER, AS PLAINTIFF WAS BEING TREATED IN THE URGENT TREATMENT AREA (UTA), PLAINTIFF PLEADED WITH THE ATTENDING UTA NURSE TO PLEASE DOCUMENT "ACCURATELY" THE INDIFFERENCE THAT HE WAS SUBJECTED TO. GRAVES (SGT.) OVERHEARD PLAINTIFF AND BEGAN TO CONCOCT A FABRICATED VERSION OF EVENTS, FALSELY ALLEGING THAT HE LAST SEEN PLAINTIFF ALIVE AND WELL AT 5:00 P.M., HE ALSO FALSELY CLAIMED THAT OFFICERS WERE POSITIONED AT PLAINTIFFS' BACK WINDOW AND OBSERVED PLAINTIFF WIPING BLOOD ON THE CELL WALLS. PLAINTIFF TOLD GRAVES (SGT.) THAT HES LYING AND IF HIS VERSION IS TRUE, WHY DIDN'T HE OR HIS OFFICERS RADIO IT IN, ACTIVATE THEIR PERSONAL ALARM, OR REMAIN POSITIONED AT THE BACK WINDOW TO MAINTAIN A CONTINUED VISUAL ON PLAINTIFF. PLAINTIFF CONTENDS THAT IT WAS IMPOSSIBLE FOR GRAVES (SGT) OR HIS OFFICERS TO SEE THROUGH THE BACK WINDOW. GRAVES (SGT.)

-5-

ACTED WITH GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE TO A SERIOUS MENTAL HEALTH NEED RESULTING IN INJURY. THEN HE

CONCEALED HIS RECKLESS CONDUCT WITH A FABRICATED VERSION.

16.  DURING THE 2½ TO 3 CONTINUOUS HOURS THAT PLAINTIFF WAS BOARDED UP AND IN DISTRESS, PLAINTIFF HEARD A
MALE SARCASTICALLY SAY LET HIM KILL HIMSELF GOD'S.", A FEMALE VOICE SAID, BE NICE WE CAN'T HEAR YOU. THEN,
DEMONSTRATING THAT PLAINTIFF FILING OF APPEALS HAD A MINIMAL ROLE FOR THE LACK OF CONCERN FOR HIS WELLNESS ON AUGUST 11, 2016.

PLAINTIFF WAS SUBJECTED TO A SERIES OF RETALIATORY TACTICS.

17.  ALL MENTAL HEALTH, MEDICAL, AND CUSTODY PERSONNEL ON DUTY IN THE CTC AT PRSP ON AUGUST 11, 2016, WERE REQUIRED
TO COORDINATE WITH EACH OTHER IN THE EVENT THAT AN INMATE IS EXHIBITING SYMPTOMS ASSOCIATED WITH SUICIDAL OR SELF-INJURIOUS
BEHAVIOR. THEY HAVING KNOWLEDGE OF PLAINTIFF'S MEDICAL MENTAL HEALTH HISTORY AND WERE AWARE THAT PLAINTIFF WAS IN A MANIC STATE OF
DISTRESS, HAD NOT BEEN VISUALLY SEEN, AND YELLED THAT HE WAS NOT OKAY WHEN ASKED. THESE EMPLOYEES NAMED AND UNNAMED
WERE RESPONSIBLE FOR PLAINTIFFS WELLNESS BUT INSTEAD TREATED PLAINTIFF AS A NUISANCE AND LEFT HIM UNSUPERVISED. FAILED
TO TAKE ANY REASONABLE ACTION TO PREVENT HARM. ALL MENTAL HEALTH, MEDICAL, AND CUSTODY PERSONNEL ON DUTY WITH
AUGUST 11, 2016, IDENTIFIED AND UNIDENTIFIED ACTED WITH GROSS NEGLIGENCE AND RECKLESS DELIBERATE INDIFFERENCE TO A SERIOUS

MENTAL HEALTH NEED.

18.  THE CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR) HAS A ZERO TOLERANCE REGARDING THE CODE OF
SILENCE THAT STATES IN PART: 'ANY EMPLOYEE, REGARDLESS OF RANK, SWORN OR NON SWORN, WITH FAILS TO REPORT VIOLATIONS OF POLICY OR WHO
ACTS IN A MANNER THAT FOSTERS THE CODE OF SILENCE, SHALL BE SUBJECT TO DISCIPLINE UP TO AND INCLUDING TERMINATION.'. YET NOT ONE
EMPLOYEE FILED A COMPLAINT AGAINST ANOTHER EMPLOYEE AT PRSP FOR THE EVENTS OF AUGUST 11, 2016, BUT INSTEAD CONSPIRED WITH ONE

ANOTHER TO PROTECT EACH OTHER WHICH PROMOTES A CODE OF SILENCE.

19.  ALL CDCR EMPLOYEES ARE TRAINED TO RECOGNIZE SYMPTOMS ASSOCIATED WITH SUICIDE RISK, THE APPROPRIATE PROCEDURES
FOR STAFF INTERVENTION, AND THE APPROPRIATE PROCEDURES TO BE FOLLOWED IN RESPONSE TO EMERGENCIES SITUATIONS RESULTING FROM SELF-
INJURIOUS OR SUICIDAL ACTIONS. MOREOVER, EMPLOYEES ARE PROHIBITED FROM DARKENING A RUNN FROM AN INMATES DOOR IF THEY CANNOT

VISUALLY SEE THE INMATE.

20.  DURING THE FIRST LEVEL OF PLAINTIFFS APPEAL REGARDING AUGUST 11, 2016, THE HIRING AUTHORITY CONCLUDED THAT
NONE OF PLAINTIFFS CLAIMS THAT STAFF COMPLAINT CRITERIA WITH DEMONSTRATES AN ATTEMPT TO CONCEAL STAFF MISCONDUCT. ON
NOVEMBER 27, 2016, PLAINTIFF WAS INTERVIEWED BY D. RAY (SRN II) REGARDING THIS APPEAL. D. RAY (SRN II) WAS FOUND AND
MISCONDUCT BY CTC STAFF AND KEPT THE APPEAL AS ROUTINE TO PREVENT AN INQUIRY. D. RAY (SRN II) PROTECTED HER CO-WORKERS
AND CONCEALED PLAINTIFF VIOLATIONS OF POLICY AND THE GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE THAT PLAINTIFF WAS

SUBJECTED TO ON AUGUST 17, 2016.   MEANWHILE, CHIEF PSYCHOLOGIST SPECIALIST PARKS, H. FROM MENTAL HEALTH HEADQUARTERS WAS AT

PBSP CONDUCTING AN INSPECTION.  PLAINTIFFS PRIMARY CLINICIAN CAPPELLO, V. (LCSW) TOLD PARKS, H. THAT SHE NEEDS TO INTERVIEW

PLAINTIFF.       ON DEMBER 14, 2016, PLAINTIFF WAS INTERVIEWED BY PARKS, H. FROM MH HEADQUARTERS.   ON DECEMBER 25, 2016,

PLAINTIFF INFORMED THE HEALTH CARE APPEALS COORDINATOR THAT THE HIRING AUTHORITY AND RAY, D. (SRN II) WERE CONCEALING STAFF

MISCONDUCT WHICH PLAINTIFF REPORTED TO CHIEF PSYCHOLOGIST SPECIALIST PARKS ON DECEMBER 14, 2016.  PLAINTIFFS APPEAL WAS

ABRUPTLY BIFURCATED AND CONVERTED INTO A STAFF COMPLAINT BUT ONLY AFTER PLAINTIFF MENTIONED THAT HE SPOKE WITH PARKS, H.

PLAINTIFFS BIFURCATED APPEAL WAS RE-ASSIGNED TO RAY, D. (SRN II) WHOM DID NOT HOLD EVERYONE ACCOUNTABLE TO PROTECT EMPLOYEES,

CONCEAL THE MORE SERIOUS INFRACTIONS, AND MINIMIZE THE GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE.  RAY, D. (SRN II) WAS

COMPELLED TO HOLD SOME EMPLOYEES MINIMALLY ACCOUNTABLE BECAUSE OF PLAINTIFF MEETING WITH MH HEADQUARTERS SPECIALIST PARKS,

H.  ALTHOUGH, RAY, D (SRN II) CHANGED HER INITIAL FINDINGS, THE INVESTIGATION BY RAY, S. (SRN II) WAS NOT FAIR AND UNBIASED.

21.              ON APRIL 17, 2017, PLAINTIFF FILED A SUBSEQUENT APPEAL REQUESTING THAT CUSTODY AND MENTAL HEALTH CLINICIANS

BE HELD ACCOUNTABLE FOR THE GROSS NEGLIGENCE AND DELIBERATE INDIFFERENCE THAT PLAINTIFF WAS SUBJECTED TO ON AUGUST 17, 2016.  THE

FINDINGS TO THE SUBSEQUENT APPEAL WERE THAT ONCE PLAINTIFFS APPEAL WAS CONVERTED INTO A STAFF COMPLAINT IT WAS INVESTIGATED IN

EXTENSIVE DETAIL WHICH IS FALSE  JENSEN, L. (PSY. D) AND BROWN, P. (PHD) WERE OMITTED FROM ALL APPEAL INQUIRIES AND THE APPEAL

REGARDING CUSTODY WAS FRIVIDUSLY CANCELLED, TO CONCEAL MISCONDUCT AND RETALIATE AGAINST PLAINTIFF.

22.              PLAINTIFF ASSERTS THAT CTC SUPERVISORS ARE ALSO TO BLAIM BY FAILING TO HOLD EMPLOYEES ACCOUNTABLE FOR PAST

CONDUCT THAT SHOWED A REOKLESS OR CALLOUS INDIFFERENCE TO THE RIGHT OF OTHERS AT CTC.  THEREFORE, CREATING AN ENVIORNMENT

THAT LACKS ACCOUNTABILITY MAKING CONDITIONS UNSAFE AND PROMOTING A CODE OF SILENCE.   THREE MONTHS PRIOR TO THE INCIDENT

IN QUESTION, PLAINTIFF WAS IN A MHCB AT PBSP.  INMATES ARE REQUIRED TO MEET DAILY WITH A CLINICIAN WHILE IN A MHCB.  ON

APRIL 27, 2016, PLAINTIFF BEGAN TO FEEL SUICIDAL AND EXPRESSED THIS TO MEDICAL AND MENTAL HEALTH PERSONNEL AT CTC MHCB.

FOR TWO DAYS PLAINTIFF PLEADED TO BE SEEN, IT WAS DOCUMENTED BUT CLINICIANS WERE DISMISSIVE AND PLAINTIFF WAS NOT PULLED

OUT.  ONE PSYCHIATRIST EVEN DOCUMENTED, "IF VERDUZCO (PLAINTIFF) CONTINUES TO CLAIM THAT HE'S SUICIDAL WE MAY HAVE TO TAKE

HIS CLOTHES FOR THE WEEKEND".  YET PLAINTIFF WAS NOT SEEN BY A PSYCHOLOGIST.  CLEARLY PLAINTIFF WAS TREATED AS A NUISANCE.  AFTER

TWO DAYS OF ASKING TO BE SEEN AND IGNORED PLAINTIFF REACHED SUCH A LOW POINT THAT HE ATTEMPTED SUICIDE ·  AS A DESPARATE

MEASURE FOR INTERVENTION PLAINTIFF SHOWED HIS SELF-INJURIOUS WOUNDS TO MEDICAL WHOM TOOK NO ACTION.  PLAINTIFF SUSTAINED

OVER 22 STITCHES.  FOLLOWING THAT INCIDENT PLAINTIFF FILED AN APPEAL NOTIFYING SUPERVISORS OF THE RECKLESS DELIBERATE

INDIFFERENCE BY CTC PERSONNEL, DESPITE PLAINTIFFS' UNDISPUTABLE EVIDENCE IN THAT INCIDENT NOT ONE EMPLOYEE WAS HELD

ACCOUNTABLE.  SUPERVISORS LIMON, K. (PSY.D), RAY, D. (SRN II), VENROA, S. (SRN II) CONCEALED ALL MISCONDUCT IN THAT INCIDENT.

IN THAT APPEAL PLAINTIFF REQUESTED NEW POLICIES TO TAKE EFFECT THAT REQUIRE PROMPT DISCIPLINARY ACTION FOR SUPERVISORS AND THEIR SUBORDINATES WHOM FAIL TO TAKE IMMEDIATE ACTION WHEN AN INMATE IS ATTEMPTING SUICIDE OR SELF-INJURIOUS BEHAVIOR.

23.        ON JUNE 04, 2016, HUTCHISON, M. (½) APPRISED PLAINTIFF THAT HE DISCOVERED PLAINTIFFS CONFIDENTIAL LEGAL MAIL FROM "COURT CALL" OPENED AND STUFFED INSIDE A LARGE MANILLA ENVELOPE AS HE WAS CLEANING THE STAFF OFFICE. PLAINTIFFS CONFIDENTIAL LEGAL MAIL WAS OPENED AND 11 DAYS OLD. HUTCHISON, M. (½) TOLD PLAINTIFF THAT HE ASKED THE BUILDING OFFICERS WHOM WAS RESPONSIBLE BUT NO ONE WOULD ADMIT TO DOING IT. PLAINTIFF FILED AN APPEAL FOR RETALIATION. ANDERSON, J. (SGT) WAS ASSIGNED TO INVESTIGATE WHETHER STAFF VIOLATED POLICY BY OPENING PLAINTIFFS LEGALMAIL FROM COURT CALL OUTSIDE OF HIS PRESENCE AND WITHHOLDING IT FOR 11 DAYS. PLAINTIFF IS CONVINCED HAD IT NOT BEEN FOR HUCHISON, M (½) HIS CONFIDENTAIL LEGAL MAIL FROM COURT CALL WOULD HAVE NEVER BEEN ISSUED TO HIM. ANDERSON, J. (SGT.) INTERVIEWED PLAINTIFF REGARDING THIS APPEAL AND ADVISED PLAINTIFF THAT OFFICERS DID IN FACT RETALIATE AGAINST PLAINTIFF AND VIOLATED POLICY WHICH HE WOULD STIPULATE IN HIS FINDINGS. HOWEVER, WHEN ANDERSON, J. (SGT.) SUBMITTED HIS FINDINGS ON AUGUST 25, 2016, HE STATED THAT STAFF DID NOT VIOLATE POLICY. TO FURTHER CONCEAL RETALITORY TACTICS AGAINST PLAINTIFF, HE FALSELY REPORTED THAT WHEN HE INTERVIEWED PLAINTIFF; PLAINTIFF STATED " THAT HIS LEGAL MAIL WAS OF NO IMPORTANCE AND STAFF COULD HAVE JUST THROWN IT AWAY ". ON NOVEMBER 21, 2016, CHIEF DEPUTY WARDEN (CDW) BRADBURY, D. APPROVED ANDERSON, J. (SGT.) FALSIFIED FINDINGS WHEN THERE WAS SUFFICIENT EVIDENCE THAT UNDISPUTABLY PROVED THAT PLAINTIFFS CONFIDENTIAL LEGAL MAIL FROM COURT CALL WAS OPENED OUTSIDE PLAINTIFFS PRESENCE AND WITHHELD FOR 11 DAYS. ON DECEMBER 14, 2016, PLAINTIFF FILED AN APPEAL AGAINST BRADBURY, D. (CDW) FOR CONCEALING STAFF MISCONDUCT AND PROMOTING A CODE OF SILENCE BY REVIEWING AND APPROVING ANDERSON, J. (SGT.) FALSIFIED APPEAL INQUIRY.

24.        ON DECEMBER 16, 2016, APPEALS COORDINATOR (AC) SHELDON, A - DELIBERATELY MIS APPLIED CCR .TIT. 15. REGULATIONS TO CANCEL PLAINTIFFS APPEAL AGAINST BRADBURY, D (CDW) FALSELY STATING THAT IT WAS A DUPLICATE APPEAR AND PLAINTIFF EXCEEDED TIME CONSTRAINTS REGARDING ALLEGATIONS OF STAFF MISCONDUCT.        ON DECEMBER 26, 2016, PLAINTIFF FILED AN APPEAL CHALLENGING THE CANCELLATION OF HIS APPEAL AGAINST BRADBURY, D - (CDW) STATING FIRST AMENDMENT RETALIATION BY FALSIFYING A CDC FORM 695 TO CIRCUMVENT / CURTAIL THE APPEAL PROCESS TO PROMOTE A CODE OF SILENCE. PLAINTIFF STATED THAT HIS APPEAL WAS NOT A DUPLICATE BECAUSE PLAINTIFF WAS PROTESTING THE MISCONDUCT BY BRADBURY, D - (CDW) WHOM WAS COMPLICIT IN AIDING AND ABETING ANDERSON, J. (SGT.) IN THE FALSIFIED FINDINGS REGARDING PLAINTIFFS CONFIDENTIAL LEGAL MAIL. BRADBURY, D. (CDW) REVIEWED AND APPROVED ANDERSON, J. (SGT.) FALSIFIED FINDINGS ON NOVEMBER 21, 2016, PLAINTIFF FILED AN APPEAL AGAINST BRADBURY, D (CDW) ON DECEMBER 14, 2016, WELL WITHIN THE (30) DAY TIME CONSTRAINTS. THUS, SUBSTANTIATES PLAINTIFFS CLAIM THAT SHELDON, A. (AC) FALSIFIED A CDC FORM 695 ALLEGING THAT PLAINTIFF EXCEEDED TIME CONSTRAINTS. SHELDON, A. (AC) WAS PROTECTING BRADBURY, D (CDW) AND COMPLICATING THE APPEAL PROCESS AS A RETALITORY

TACTICS . PLAINTIFF APPEALED SHELDON, A . . (AC) FALSIFIED CDC FORM 695 . HOWEVER, ON APRIL 21, 2017 , BRAMUCCI, N. (AGPA)

CANCELLED PLAINTIFFS APPEAL AGAINGST SHELDON, A . (AC) BECAUSE PLAINTIFF HAD IRREFUTABLE EVIDENCE THAT SHELDON, A . (AC)

FALSIFIED HER CDC FORM 695 DATED DECEMBER 16, 2016 , TO CANCEL PLAINTIFFS APPEAL AGAINGST BRADBURY, D. ( CDW) .  SHELDON, A .

(AC) AND BRAMMUCI, N. (AGPA) BOTH WORK IN THE INMATE APPEALS OFFICE HAVE REASON TO PROTECT EACH OTHER .

25 .                 FOLLOWING THE INCIDENT IN PARAGRAPH  No. 23 HERETO ,  PLAINTIFF SUBMITTED A REQUEST FOR HIS CDC 119 CONFIDENTIAL

LEGAL MAIL LOGS .  UPON RECEIVING IT PLAINTIFF DISCOVERED THAT CONFIDENTIAL LEGAL MAIL FROM THE EASTERN DISTRICT COURT WAS

PROCESSED BY THE MAILROOM AT PBSP BUT WAS NEVER ISSUED TO HIM .   MAILROOM SUPERVISOR  KUZMICZ , M.  INFORMED

PLAINTIFF THAT HIS CONFIDENTIAL LEGAL MAIL WAS FORWARDED TO PLAINTIFFS UNIT .    ON JULY 11 , 2016 , PLAINTIFF FILED AN APPEAL

FOR FELONIOUS CRIMINAL CONDUCT BECAUSE OBSTRUCTION WITH THE DELIVERY OF MAIL IS A FEDERAL OFFENCE .  PLAINTIFF ALSO

CONTENDED A CAMPANGMENT OF HARRASSMENT .  IT WAS AN UNDISPUTED FACT THAT CONFIDENTIAL LEGAL MAIL FROM THE

EASTERN DISTRICT COURT WAS PROCESSED BY THE MAILROOM BUT NEVER ISSUED TO PLAINTIFF WHICH IS SUPPORTED BY ALL

CONFIDENTIAL LEGAL MAIL LOGS .  WILBER , M. (SGT.) WAS ASSIGNED TO INVESTIGATE THIS MATTER .   ON AUGUST 19, 2016

WILBER, M. (SGT.) SUBMITTED HIS FINDINGS AND TO CONCEAL RETALITORY CONDUCT THAT PLAINTIFF WAS SUBJECTED TO , HE FALSELY

FOUND THAT NO VIOLATION OF POLICY OCCURED WITH RESPECT TO PLAINTIFFS  CONFIDENTIAL LEGAL MAIL FROM THE EASTERN

DISTRICT COURT .  WILBER , M. (SGT.) WAS COMPLICIT IN PROTECTING STAFF , CONCEALING MISCONDUCT, AND PROMOTING A CODE OF

SILENCE .  BRADBURY, D. (CDW) WAS THE REVIEWING AUTHORITY AND ON OCTOBER 27, 2016 , APPROVED WILBER , M. (SGT.'s)

FALSIFIED FINDINGS THAT NO VIOLATION OF POLICY OCCURED DESPITE THE IRREFUTABLE FACTS THAT PLAINTIFF WAS NEVER

ISSUED HIS CONFIDENTIAL LEGAL MAIL FROM THE EASTERN DISTRICT COURT .  THIS SERVES AS A CLEAR EXAMPLE HOW EMPLOYEE'S

INCLUSIVE OF SUPERVISORS ACT IN CONCERT TO VIOLATE PLAINTIFFS RIGHTS AND CONSPIRE WITH EACH OTHER TO COVER IT UP.

PLAINTIFF HAD FILED APPEALS AGAINGST CTC OFFICERS , WILBER , M. (SGT .) , AND BRADBURY, D . (CDW), RESPECTIVELY  PRIOR TO

THESE INCIDENTS .

26 .                 ON OCTOBER 05 , 2016 , AN APPEAL WAS SUBMITTED ON BEHALF OF PLAINTIFF REGARDING PLAINTIFFS CLAIMS

THAT WILBER , M. (SGT.) FALSIFIED HIS FINDINGS WHEN CONCLUDING THAT NO VIOLATION OF POLICY OCCURED WHEN PLAINTIFF WAS

NEVER ISSUED HIS CONFIDENTIAL LEGAL MAIL FROM THE EASTERN DISTRICT COURT .  WRIGHT, S. (SGT.) WAS ASSIGNED TO

INVESTIGATE THIS MATTER .  ON OCTOBER 19, 2016 , WRIGHT, S. (SGT.) SUBMITTED HIS FINDINGS AND TO CONCEAL BLATANT

VIOLATIONS OF POLICY TO RETALIATE AGAINGST PLAINTIFF , WRIGHT, S . (SGT.) FALSELY FOUND THAT NO VIOLATION OF POLICY

OCCURED BY WILBER , M. (SGT.) .  WRIGHT, S . (SGT.) WAS COMPLICIT IN PROTECTING STAFF , CONCEALING MISCONDUCT , AND

PERPETUATING A CODE OF SILENCE .  BRADBURY, D. (CDW) WAS THE REVIEWING AUTHORITY AND ON JANUARY 10, 2017 APPROVED

WRIGHT, S. (SGT.); FALSIFIED FINDINGS THAT WILBER, M. (SGT.) DID NOT VIOLATE POLICY WHEN FALSELY STIPULATING THAT STAFF DID NOT VIOLATE

POLICY OR INFRINGE UPON PLAINTIFFS RIGHTS BY DEPRIVING HIM OF HIS CONFIDENTIAL LEGAL MAIL FROM THE EASTERN DISTRICT COURT AS A FORM

OF RETALIATION. BRADBURY, D. (CDW), CONTINUED TO PROMOTE A CODE OF SILENCE BY APPROVING FALSIFIED INVESTIGATION REPORTS. HE IS A

CHIEF DEPUTY WARDEN AND HAD AN OBLIGATION TO REPORT ALL MISCONDUCT NOT CONCEAL IT.

27.             ON SEPTEMBER 14, 2016, PLAINTIFF WAS INVOLUNTARILY COMMITTED TO A DEPARTMENT STATE HOSPITAL (DSH) AND PLACED IN A

ACUTE PSYCHIATRIC PROGRAM (APP) DUE TO CONTINUED SUICIDAL BEHAVIOR.

28.             ON NOVEMBER 17, 2016, PLAINTIFF WAS SPECIAL TRANSFERED FROM DSH ACUTE PSYCHIATRIC PROGRAM BACK TO PBSP. ONCE AT PBSP

PLAINTIFF WAS HOUSED IN ASU/STRH CELL 123 AT 5:47 P.M., BRAVO SECTION WHICH WAS DESIGNATED AS AN INTAKE/ORIENTATION SECTION. ON

NOVEMBER 19, 2016, AT ABOUT 10:00 A.M., ESARZA, D. (C/o) INFORMED PLAINTIFF THAT HE WAS MOVING TO DELTA SECTION. PLAINTIFF TOLD ESPARZA, D.

C/o THAT HE HAS BEEN IN BRAVO SECTION, CELL 123 ABOUT 36 HOURS, HAS NOT BEEN SEEN BY A CLASSIFICATION COMMITTEE AND HE IS STILL ON INTAKE/

ORIENTATION STATUS. PLAINTIFF ASKED ESPARZA, D. (C/o) WHY IS HE BEING SINGLED OUT. ESPARZA, D. (C/o) TOLD PLAINTIFF, IF HE DOES NOT

MOVE, THEY WILL COME GET HIM. THE FOLLOWING MOORNING, ON NOVEMBER 20, 2016, PLAINTIFF ATTENDED THE INDIVIDUAL EXERCISE MODULES

(IEM) YARD. DURING YARD RECALL AT 10:30 A.M. WHILE PLAINTIFF WAS BEING ESCORTED INTO THE HOUSING UNIT, TUBBS (C/o) TOLD PLAINTIFF,

"YOU'RE IN DELTA ROW NOW, CELL 130". PLAINTIFFS PERSONAL BELONGINGS WERE MOVED INTO CELL 130, DELTA ROW AT 9:24 A.M. WHILE

PLAINTIFF WAS ON YARD. PLAINTIFFS CELL MOVE WAS UNWARRENTED, UNJUSTIFIED, AND RETALITORY IN NATURE. PLAINTIFF WAS STILL ON A FIVE

DAY FOLLOW-UP, MEANING, DAILY SUICIDE ASSESSMENTS UNTIL NOVEMBER 22, 2016. PLAINTIFF HAD BEEN OUT OF ACUTE PSYCHIATRIC CARE 64

HOURS. OFFICERS KNEW THAT PLAINTIFF WAS TRYING TO RE-ADJUST AND WAS NOT PREPARED TO MOVE. THERE WAS AT LEAST SIX OTHER INMATES IN

BRAVO SECTION THAT HAD ALREADY BEEN SEEN BY A CLASSIFICATION COMMITTEE AND WERE OFF ORIENTATION STATUS WHOM COULD HAVE BEEN MOVED.

BUTCHER, (LT) IS RESPONSIBLE FOR ABSOLUTE COMPLIANCE WITH ALL POLICIES AND PROCEDURES WITHIN OPERATIONAL PROCEDURE (O.P.) 22D, YET

BUTCHER (LT.) DID NOT REPRIMAND STAFF FOR DELIBERATELY MOVING PLAINTIFF OUT OF INTAKE/ORIENTATION SECTION OR MOVING PLAINTIFF PERIOD

64 HOURS AFTER DISCHARGED FROM ACUTE PSYCHIATRIC CARE AS A FORM OF HARRASSMENT.

29.             PLAINTIFF DOES NOT DISPUTE THAT HE WOULD HAVE OF BEEN EVELENTUALLY MOVED ONCE SEEN BY A CLASSIFICATION COMMITTEE.

PLAINTIFF CONTENDS THAT THE TIMING OF THE MOVE DID NOT COINCIDE WITH POLICY AND THE MOTIVE WAS TO HARRASS HIM. OFFICERS WERE AWARE

THAT PLAINTIFF JUST WANTED TO BE LEFT ALONE AND WAS TRYING TO READJUST. ASU/STRH IS THE UNIT WHERE PLAINTIFFS LEGAL MAIL WAS TAMPERED

WITH AND WHERE HE FILED VARIOUS GRIEVANCES FROM.

30.             DECEMBER 13, 2016, PLAINTIFF FILED AN APPEAL FOR A RETALITORY BED MOVE. BOND, A. (CCII) WAS ASSIGRED THIS APPEAL. BOND,

A. (CCII) HAD REASON TO REVIEW THIS MATTER UNFAIRLY, BOND, A. (CCII) WORKED IN ASU/STRH WHERE THE INCIDENT OCCURED AND BOND, A. (CCII) HAD

PERSONALLY HARRASSED PLAINTIFF. AT ANY RATE, TO PERPETURATE A CODE OF SILENCE AND CONCEAL THE RETALITORY BED MOVE, HE CITED AN

ADDENDUM TO O.P. 220 THAT CLAIMS STATES , " THAT INTAKE STATUS IS FOR A PERIOD OF 72 HOURS ". BONDS , A. (CELL) FURTHER CLAIMED THAT ALL CELLS

IN ASU/STRH ARE CLEAR FOR INTAKE/ORIENTATION STATUTUS IN CASE INTAKE CELLS ARE UNAVAILABLE . THIS ADDENDUM FAVORS PLAINTIFF CLAIM .

FIRST , PLAINTIFF HAD ONLY BEEN IN ASU/STRH FOR 60 HOURS . THEREFORE , HAD NOT COMPLETED THE MINIMUM 72 HOUR INTAKE PERIOD . SECONDLY

IF , ALL CELLS IN ASU/STRH ARE CLEAR FOR INTAKE , THE NOTION THAT PLAINTIFF WAS MOVED TO MAKE ROOM FOR A NEW INTAKE IS WITHOUT MERIT

BECAUSE THE ALLEGED INCOMING INMATE COULD HAVE BEEN HOUSED IN ANY CELL FOR HIS 72 HOUR INTAKE PERIOD . BOND , A. (CELL) WAS ATTEMPTING

TO ESTABLISH THAT PLAINTIFF COULD HAVE COMPLETED HIS INTAKE STATUS IN ANY CELL TO JUSTIFY THE MOVE . THEN , BOND , A. (CELL) OUTRIGHT

FALSIFIED HIS REPORT FALSELY ALLEGING THAT PLAINTIFF WAS DEEM ASU/STRH CONTINUEOUSLY SINCE MAY 06, 2016 . THUS , WAS NOT CONSIDERED

A NEW ADMIT AND INTAKE ORIENTATION STATUS WAS NOT NECESSARY . DURING A CLASSIFICATION HEARING ON JULY 22, 2016 WHICH BOND , A.

(CELL) ATTENDED , PLAINTIFF WAS RELEASED FROM ASU/STRH AND DEPARTED ASU/STRH ON JULY 22, 2016 . HENCE , PLAINTIFF WAS A NEW

INTAKE TO ASU/STRH ON NOVEMBER 17, 2016 . BOND , A. (CELL) CLAIMED THAT PLAINTIFF WAS MOVED TO MAKE ROOM FOR NEW INMATES , THE

HOUSING UNIT RECORDS WILL PROVE THAT AT LEAST SIX INMATES IN BRAVO SECTION HAD BEEN SEEN BY CLASSIFICATION AND TAKEN OFF ORIENTATION

STATUS WHOM COULD HAVE BEEN MOVED . HOUSING LOG BOOKS WILL ALSO PROVE THAT ON AVERAGE INMATES SPENT SEVEN TO TEN DAY IN

BRAVO SECTION .

31.          ON MAY 22, 2017 , C.E. DUCART (WARDEN) APPROVED BOND , A. , (CELL) FALSIFIED AND DISTORTED FINDINGS WHICH

SHOWS THAT UP TO THE LEVEL OF WARDEN VIOLATION'S OF POLICY AND HARRASSMENT ARE COVERED UP TO PROMOTE A CODE OF SILENCE .

C.E. DUCART (WARDEN) ALSO DENIED PLAINTIFFS REQUEST NOT TO BE FURTHER HARRASSED . PLAINTIFFS APPEAL WAS FRIVOUSLY DENIED

AT THE THIRD LEVEL TO CONCEAL MISCONDUCT . PLAINTIFF APPEALED THE CANCELLATION WHICH WAS UNFAIRLY DENIED . CDCR AS A

WHOLE WILL COMPLICATE AND CURTAIL THE APPEAL PROCESS , INSTEAD OF HOLDING EMPLOYEES ACCOUNTABLE AND TAKING CORRECTIVE

ACTION . PLAINTIFF , CAN ALSO PROVE DURING A PRIOR STAY IN ASU/STRH HOUSING AT PBSP HE REMAINED IN BRAVO SECTION

(32) DAYS .

32.          ON NOVEMBER 29, 2016 , PLAINTIFF WAS PROVIDED AN UP-DATED COPY OF HIS CDC 119 INCOMING CONFIDENTIAL LEGAL

MAIL LOG . PLAINTIFF DISCOVERED THAT LEGAL MAIL FROM THE EASTERN DISTRICT COURT WAS PROCESSED BY THE MAIL ROOM BUT NEVER

ISSUED TO HIM . THIS WAS THE SECOND TIME THAT PLAINTIFFS LEGAL MAIL OUTRIGHT DISAPPEARED .

33.          ON DECEMBER 18, 2016 , PLAINTIFF FILED AN APPEAL ASSERTING STAFF MISCONDUCT , RETALIATION , AND A

CAMPAIGNMENT OF HARRASSMENT FOR DEPRIVING PLAINTIFF OF HIS CONFIDENTIAL LEGAL MAIL . IN A COORDINATED EFFORT TO CONCEAL

THE HARRASSMENT , THE FINDINGS WERE THAT NO VIOLATION OCCURED , AND PLAINTIFFS CONFIDENTIAL LEGAL MAIL WOULD BE ISSUED

TO HIM WHEN FOUND . BUT , IT WAS NEVER FOUND OR ISSUED TO PLAINTIFF . PLAINTIFFS APPEAL WAS THEN METHODICALLY CANCELLED

TO CONCEAL THE RETALIATION FOR FILING APPEALS AND PROMOTE A CODE OF SILENCE . PLAINTIFF CONTENDS THAT THIS VALIDATES

HIS ARGUMENT THAT HE WAS THE SUBJECT OF A CAMPAIGNMENT OF HARRASSMENT FOR FILING APPEALS.

34.        PLAINTIFF HAD NO ACCESS TO HIS PROPERTY UNTIL DECEMBER 28, 2016, WHEN HE DISCOVERED THAT HIS TV/RADIO COMBO VALUED AT 228.95 WAS BROKEN AND $40.75 OF ITEM(S) WERE OMITED FROM HIS PROPERTY INVENTORY RECEIPT. PRISON RULES REQUIRE STAFF TO SECURE AND INVENTORY PAID INMATES PROPERTY ONCE ADMITED INTO A MHCB. PLAINTIFF WAS ADMITED INTO A MHCB ON JULY 27, 2016, HIS PROPERTY WAS NOT INVENTORIED UNTIL SEPTEMBER 08, 2016, (44) DAYS LATER. PLAINTIFF WAS NOT NOTIFIED OR ALLOWED TO SIGN HIS INVENTORY PROPERTY RECEIPT TO VERIFY THE CONTENTS. PLAINTIFF CONTENDS THAT UNIDENTIFIED STAFF ALLOWED HIS PROPERTY TO SIT FOR (44) DAYS TO MAKE IT IMPOSSIBLE TO ASCERTAIN WHOM BROKE HIS TV/RADIO COMBINATION AND TOOK/DESTROYED $40.75 IN ITEM(S).   ONLY OFFICERS HAD ACCESS TO PLAINTIFFS PROPERTY. PLAINTIFF WAS NOT ALLOWED TO VERIFY HIS PROPERTY INVENTORY RECEIPT BECAUSE HE WOULD OF NOTICED THE MISSING ITEM(S). THESE ACTIONS CORROBORATE PLAINTIFFS CLAIMS THAT HE WAS UNDENIABLY SUBJECTED TO A SERIES OF RETALITORY TACTICS.

35.        ON JANUARY 16, 2017, PLAINTIFF FILED AN APPEAL FOR THEFT, DAMAGED PROPERTY, AND RETALIATION. MANUON, S. (LT.) WAS ASSIGNED THIS APPEAL. PLAINTIFF WAS INTERVIEWED BY MANUON, S.(LT.) ON FEBRUARY 11, 2017. PLAINTIFF REITERATED TO MANUON, S. (LT) THAT ONLY OFFICERS HAD ACCESS TO HIS PROPERTY. MANUON, S. (LT.) TOLD PLAINTIFF THAT HE WAS NOT ADDRESSING PROPERTY ISSUES AND PLAINTIFF WOULD HAVE TO FILE A SEPARATE APPEAL SEEKING REIMBURSTMENT. MANUON, S. (LT.) SUBMITED HIS FINDINGS ON FEBRUARY 23, 2017 AND DID DETERMINE THAT STAFF VIOLATED POLICY BUT PLAINTIFF IS UNAWARE IN WHAT REGARD BECAUSE MANUON, S. (LT.) TOLD PLAINTIFF THAT HE WILL NEVER PROVE RETALIATION.

36.        ON DECEMBER 29, 2016, WOOD, T. (C/o.) ATTEMPTED TO COMPELL PLAINTIFF TO ACCEPT A 13" RCA T.V. VALUED AT $169.95. PLAINTIFF CONSULTED WITH AN INMATE THEN TOLD WOOD, T. (C/o.) THAT HIS APPLIANCE WAS VALUED AT $228.95, SO CAN HE BE PROVIDED ADDITIONAL ITEM(S) IN THE AMOUNT OF $59.95 TO MAKE UP THE DIFFERENCE. PLAINTIFF ASKED WOOD, T. (C/o.) IF HE CAN CALL THE PROPERTY SERGEANT, IF THEY AGREE TO THE ADDITIONAL ITEMS PLAINTIFF WOULD ACCEPT THE T.V. THAT WAS OF A LESSER VALUE THAN HIS AND DID NOT HAVE A RADIO. WOOD, T. (C/o.) TOLD PLAINTIFF THAT HE WILL NOT CALL THE PROPERTY SERGEANT ANDERSON, J. AND PLAINTIFF CAN TAKE THIS RCA OR NOTHING AT ALL. PLAINTIFF DECLINED BECAUSE HE WAS ENTITLED TO REIMBURSTMENT TOTALING $228.95. WOOD, T. (C/o) TOLD PLAINTIFF, I GUESS YOU WON'T BE WATCHING NOTHING FOR NEW YEARS. THEN, STATED YOU DO ALL THAT LEGAL WORK, I WAS TOLD ABOUT YOU, SO YOU'RE ONE OF THOSE GUYS. INMATE DARRYL RAY MILLS # AS-7436 WITNESSED THIS ACCOUNT. PLAINTIFF ASKED WOOD, T. (C/o.) WHO WAS RESPONSIBLE FOR BREAKING HIS TV/RADIO COMBO, WOOD, T. (C/o.) TOLD PLAINTIFF DOES HE WANT HIS PROPERTY IN STORAGE TO DISAPPEAR.

37.        ON JANUARY 02, 2017, PLAINTIFF SUBMITED A CDCR 22 REQUEST FOR SERVICE OR INTERVIEW TO PROPERTY SERGEANT, ANDERSON, J. EXPRESSING THAT HE WANTED TO RESOLVE THIS WITHOUT UTILIZING THE APPEAL PROCESS. PLAINTIFF SIMPLY WANTED

THE TOTAL VALUE OF HIS ACTUAL LOSS WHICH WAS REASONABLE AND CDCR POLICY.

38.　　　　　ON JANUARY 06, 2017, ANDERSON, J. (SGT.) PROVIDED PLAINTIFF A WRITTEN REPLY STATING THAT PLAINTIFF DECLINED THE

RPA VALUED AT # 169.[?] AND PLAINTIFF CAN PURCHASE HIS OWN T.V. AT PLAINTIFFS EXPENSE. ANDERSON, J. (SGT.) DID NOT ADDRESS PLAINTIFFS

POSITION TO RESOLVE THIS BY PROVIDING ADDITIONAL ITEMS. THE CDCR PROCESS IS INTENDED TO REACH A TIMELY RESOLUTION YET ANDERSON, J.

(SGT.) WAS CURTAILING THIS PROCESS AS A FORM OF RETALIATION BECAUSE PLAINTIFF HAD IRREFUTABLE EVIDENCE THAT ANDERSON, J. (SGT.)

FALSIFIED HIS FINDINGS REGARDING PLAINTIFFS CONFIDENTIAL LEGAL MAIL FROM COURT CALL, PARAGRAPH 23, HEREIN.

39.　　　　　ON JANUARY 09, 2017, PLAINTIFF SUBMITTED A SUPERVISOR REVIEW TO ANDERSON, J. (SGT.) SUPERVISOR, HOWEVER,

IT WAS INTERCEPTED BY ANDERSON, J. (SGT.) OR ONE OF HIS EMPLOYEES, NOT GIVEN TO A SUPERVISOR, REROUTED TO THE APPEALS OFFICE AND

CONVERTED INTO AN APPEAL BY BRAMUCCI, N. (AGPA) ON JANUARY 13, 2017. THEN, BRAMUCCI, N. (AGPA) FALSIFIED A CDC FORM 695 TO CANCEL

THE APPEAL ON JANUARY 20, 2017. BRAMUCCI, N. (AGPA) CONSPIRED WITH ANDERSON, J. (SGT.) SO THAT PLAINTIFFS ALLEGATIONS AGAINST

ANDERSON, J. (SGT.) WOULD NOT BE SEEN BY HIS SUPERVISOR OR ADDRESSED IN AN APPEAL BECAUSE PLAINTIFF HAD IRREFUTABLE EVIDENCE

THAT ANDERSON, J. (SGT.) WAS NOT COMPLYING WITH CDCR 22 FORM PROCESS WHICH IS SUBJECT TO EMPLOYEE DISCIPLINARY ACTION.

40.　　　　　ANDERSON, J. (SGT.) KNEW THAT COMPELLING PLAINTIFF TO PURCHASE HIS OWN T.V. WOULD PLACE A FINANCIAL BURDEN ON

PLAINTIFF AND HIS FAMILY. HE ALSO KNEW THAT BY REFUSING TO COMPLY WITH THE CDCR 22 PROCESS PLAINTIFF WOULD HAVE TO EXHAUST THE

APPEAL PROCESS WHICH CAN TAKE UP TO ONE YEAR OR LONGER. IT TOOK PLAINTIFF (9) MONTHS TO BE COMPENSATED FOR HIS BROKEN

T.V./RADIO COMBONATION. HAD ANDERSON, J. (SGT.) COMPLIED WITH THE CDCR 22 PROCESS AND PROPERTY REGULATIONS THIS COULD HAVE

BEEN RESOLVED IN A MATTER OF DAYS AND PLAINTIFF WOULD NOT HAVE PLACED A FINANCIAL BURDEN ON HIS FAMILY FOR A NEW T.V.

41.　　　　　PLAINTIFF INITIALLY FILED AN APPEAL FOR THE THEFT OF HIS PROPERTY AND BROKEN T.V./RADIO COMBINATION ON JANUARY 16, 2017,

ON FEBRUARY 11, 2017, PLAINTIFF WAS INFORMED BY MARION, G.(LT.) THE PROPERTY ISSUES WOULD NOT TO ADDRESSED. HENCE, PLAINTIFF HAD

(30) DAYS FROM FEBRUARY 11, 2017 TO FILE A SEPARATE APPEAL FOR HIS PROPERTY.

42.　　　　　ON MARCH 04, 2017, PLAINTIFF FILED AN APPEAL SEEKING COMPENSATION FOR HIS TV/RADIO COMBO AND MISSING CANTEEN

ITEM(S). THIS APPEAL WAS PROCESSED AT THE FIRST AND SECOND LEVE. THEN FRIVOLOUSLY CANCELLED AT THE THIRD LEVEL BY VODDIE,

M. (CHIEF) TO CONCEAL MISCONDUCT AND PROMOTE A CODE OF SILENCE.

43.　　　　　ON FEBRUARY 12, 2016, PLAINTIFF HAD TWO GA 22 FORMS AS OUTGOING MAIL. DURING MAIL PICK UP, GELINAS, P. (C/O)

ASKED PLAINTIFF IS THIS IT, JUST TWO 22 FORMS. PLAINTIFF SAID, YES". GELINAS, P. (C/O) THEN TOLD PLAINTIFF; GOOD, WE MUST BE

DOING SOMETHING RIGHT BECAUSE YOU DON'T HAVE ANYTHING TO BITCH ABOUT OR CRY. PLAINTIFF IMMEDIATELY REPORTED THIS TO MENTAL

HEALTH, WALKER, J. (PT), WILBER, M. (SGT.) HOWEVER PLAINTIFF KNEW THAT WILBER, M (SGT.) WOULD DO NOTHING SO PLAINTIFF

CONTINUED TO PROTEST UNTIL A (LT.) WAS SUMMONED. (LT.) BUCHANON, T. WAS CALLED AND PLAINTIFF CONVEY TO HIM WHAT

OCCURED.

44.          ON FEBRUARY 13, 2017, THEY VERY NEXT DAY PLAINTIFF REPORTED THE INCIDENT WITH GELINAS, P. (c/o) TO

RUSH, H. (PHD). PLAINTIFF WANTED GELINAS, P. (c/o) KEPT AWAY FROM HIM.

45.          ON FEBRUARY 14, 2017, PLAINTIFF CONTINUED PROTESTING UNTIL A (LT.) WAS SUMMONED. (LT.) RUTCHER WAS

CALLED AND PLAINTIFF REPORTED THE INCIDENT TO RUTCHER, R. (LT.). INMATE AVILA, A. # E09918 INFORMED WALKER, J. (PT),

WILBER, M. (SGT.), BUCHANON, T. (LT.), AND RUTCHER, R. (LT.) THAT HE HEARD AND WITNESSED THE HARRASSMENT. PLAINTIFF

COMPLAINED FOR TWO DAYS SO SOMEONE WOULD PUT AN END TO THE HARRASSMENT.

46.          ON FEBRUARY 16, 2017, PLAINTIFF WAS ISSUED TWO FALSIFIED 128-B CHRONOS AUTHORIZED BY GELINAS, P. (c/o)

AND WALKER, J. (PT). BOTH CHRONOS WERE WRITTEN ON FEBRUARY 14, 2017, TWO DAYS AFTER THE INCIDENT OF FEBRUARY 12, 2017.

THESE FALSIFIED CHRONO'S WERE WRITTEN AFTER PLAINTIFF COMPLAINED FOR TWO DAYS. GELINAS. P (c/o) FALSIFIED HIS VERSION TO

MINIMIZE THE HARRASSMENT.

47.          GELINAS, P.(c/o) AND WILBER, M. (SGT.) PRESSURED WALKER, J. (PT) TO FABRICATE HER 128-B AND ALLEGE THAT

DURING (PT) ROUNDS SHE WITNESSES INMATE AVILA, A. # E-09918 AGITATE PLAINTIFF NOT ALLOWING PLAINTIFF TO CALM DOWN YET NOT

ONCE DID WALKER, J. (PT) DOCUMENT HER SO-CALLED OBSERVATIONS INTO PLAINTIFFS OR INMATE AVILA'S, A. # E09918 MENTAL

HEALTH FILE. THE SOLE PURPOSE OF PT ROUNDS IS TO DOCUMENT AN INMATE(S), DEMEANOR, MOOD, ACTIVITY, ETC... WALKER, J. (PT)

128-B WAS AUTHORIZED BY HER ON FEBRUARY 14, 2017, TWO DAYS AFTER THE INCIDENT JUST LIKE GELINAS, P. (c/o). WILBER, M. (SGT.)

AND GELINAS, P. (c/o.) THEN ATTEMPTED TO UTILIZE THE CHRONO AUTHORIZED BY WALKER, J. (PT) TO HAVE INMATE AVILA, A. # E09918

ON A FALSE PRETENSE THAT AVILA, A. # E09918 WAS AFFECTING PLAINTIFF MENTAL HEALTH. THE REAL MOTIVE IN ATTEMPTING TO MOVE

AVILA, A. # E09918 WAS BECAUSE HE VOCALIZED WHAT HE WITNESSED. MOST INMATES FEAR RETALIATION AND WILL NOT GET

INVOLVED IF THEY WITNESS HARRASSMENT. THIS IS A CLEAR EXAMPLE HOW EMPLOYEES INCLUDING SUPERVISORS CONSPIRE WITH EACH

OTHER AND PRESSURE OTHER EMPLYEES TO FALSIFY AND FABRICATE REPORTS TO COVER UP MISCONDUCT.

48.          PLAINTIFF FILED AN APPEAL AGAINIST GELINAS, P. (c/o) FOR THE INCIDENT OF FEBRUARY 12, 2017, ALLEGING

HARRASSMENT, RETALIATION, AND FALSIFYING A 128-B TO COVER IT UP. PLAINTIFF STATED THAT, EVEN IF, STAFF ONLY BELIEVE GELINAS,

P. (c/o's) VERSION OF WHAT OCCURED. BY HIS OWN ADMISSION HE STILL VIOLATED POLICY. THE FINDINGS WERE THAT c/o. GELINAS, P.

DID NOT VIOLATE POLICY.   SUPERVISORS NEVER HOLD STAFF ACCOUNTABLE, BUT INSTEAD CONCEAL MISCONDUCT TO PROMOTE A CODE OF

SILENCE.

49.          PLAINTIFF, FILED A SEPARATE APPEAL AGAINIST WALKER, J. (PT) FOR FALSIFYING HER 128-B WHICH SHE ENTERED INTO

MY CENTRAL FILE AND NOT MY MENTAL HEALTH FILE OR MENTAL HEALTH RECORDS. IF WALKER, J. (PT) REALLY OBSERVED ME AGITATED SHE

Case 4:18-cv-04596-JSW   Document 1   Filed 07/30/18   Page 17 of 31

WOULD BE DOCUMENTED IF DURING CPT ROUNDS. ITS NO COINCIDENCE THAT SHE FALSIFIED HER FALSIFIED CHRONO TWO DAYS AFTER THE INCIDENT WITH C/O DELINAS, P. (4.).

50. DID MARCH 16, 2017, AT 8:09 P.M. DURING MAIL PICK UP, C/O DELINAS, P. (4.) TOLD PLAINTIFF TO DROP THE APPEAL OR DR. PLAINTIFF MAY SLIP AND FALL ON HIS WAY TO SHOWERS. PLAINTIFF SAID, WHAT, C/O DELINAS, P. (4.) SAID, YEAH ANYTHING CAN HAPPEN ON MAIL GETS LOST, YOU KNOW HOW IT GOES. PLAINTIFF PERCEIVED THIS AS A THREAT AND PONDERED DID THIS THREAT FOR A WEEK. THEN, DECIDED TO WITHDRAW HIS APPEAL AGAINST DELINAS, J. (47.). PLAINTIFF KNEW IF IN FUTURE SUES TO REPORT DELINAS, J. (47.) BECAUSE THE LAST TIME THAT HE REPORTED DELINAS, P. (4.) NOTHING HAPPENED. PLAINTIFF DID NOT WANT HIS MAIL TAMPERED WITH OR TO SLIP AND FALL AS DELINAS PUT IT.

51. PLAINTIFFS' CDCR 22 FORMS WOULD BE IGNORED. POLICY STATES THAT ANY DELAY, DESTRUCTION, OR FAILURE TO RESPOND TO PROPERLY SUBMITTED CDCR 22 FORMS IS SUBJECT TO CORRECTIVE ACTION IN ACCORDANCE WITH EMPLOYEE DISCIPLINE POLICIES. STAFF ARE REQUIRED TO SIGN A CDCR 22 FORM AND GIVE THE INMATE A COPY AS PROOF THAT IT WAS SUBMITTED, HOWEVER, WHEN PLAINTIFF DID FILE AN APPEAL WITH PROOF THAT HE SUBMITTED CDCR 22 FORMS BUT STAFF DID NOT REPLY. THE FINDING WERE THAT THERE IS NO PROOF THAT THE RECIPIENT RECEIVED THEM. SO SOMEONE WAS TAMPERING WITH PLAINTIFFS MAIL OR THE RECIPIENT REFUSED TO COMPLY WITH POLICY AND ANSWER PLAINTIFFS CDCR 22 FORMS BECAUSE IT WAS HIM. EITHER WAY THE MISCONDUCT WAS DOCUMENTED AND NO ONE WAS HELD ACCOUNTABLE WHICH ALLOWED THESE RETALIATORY TACTICS TO PERSIST.

52. PLAINTIFF CONTENDS THAT HE SUBJECTED TO A SERIES OF RETALIATORY TACTICS FOR FILING APPEALS. MOREOVER, THE APPEAL PROCESS WAS NOT FAIR, OBJECTIVE, OR UNBIASED. THE APPEALS OFFICE ROUTINELY REJECTED AND CANCELLED APPEALS FRAUDULENTLY TO CONCEAL MISCONDUCT, PROMOTE A CODE OF SILENCE, CHILL FIRST AMENDMENT RIGHTS, AND MAKE A FAILURE TO EXHAUST CLAIM.

## PRAYER FOR RELIEF

53. GRANTING PLAINTIFF A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED HIS RIGHTS UNDER THE CONSTITUTION AND LAW OF THE UNITED STATES, AND

54. GRANTING PLAINTIFF COMPENSATORY DAMAGES IN THE AMOUNT OF $50,000 AGAINST EACH DEFENDANT, JOINTLY AND SEVERALLY, AND

55. PLAINTIFF, SEEKS PUNITIVE DAMAGES IN THE AMOUNT OF $50,000 AGAINST EACH DEFENDANT, JOINTLY AND SEVERALLY.

56. PLAINTIFF ALSO SEEKS RECOVERY OF ALL COST IN THIS SUIT, AND ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER AND EQUITABLE.

57. PLAINTIFF SEEKS APPOINTMENT OF COUNSEL TO DEFEND HIS CIVIL RIGHTS WHICH WERE GROSSLY VIOLATED.

## VERIFICATION

I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, CORRECT EXCEPT AS TO THOSE MATTERS ALLEGED ON INFORMATION AND BELIEF, AND, AS TO THOSE, I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON: JULY 22, 2018

RESPECTFULLY SUBMITTED,

DANIEL VERDUZCO, PLAINTIFF

IN PRO SE

# EXHIBITS

HEALTH CARE APPEAL LOG No. : PBSP HC 16029994 _____ EXHIBIT A

HEALTH CARE APPEAL LOG No. : PBSP SC 17001012 _____ EXHIBIT B

HEALTH CARE APPEAL LOG No. : PBSP SC 17001013 _____ EXHIBIT C

HEALTH CARE APPEAL LOG No. : PBSP SC 17000980 _____ EXHIBIT D

APPEAL LOG No. : PBSP-S-17-00685 _____ EXHIBIT E

ODOR ZERO TOLERANCE REGARDING THE CODE OF SILENCE _____ EXHIBIT F

HEALTH CARE APPEAL LOG No. : PBSP HC 1602991 _____ EXHIBIT G

HEALTH CARE APPEAL LOG No. : PBSP HC 17030158 _____ EXHIBIT H

HEALTH CARE APPEAL LOG No. : PBSP SC 16000898 _____ EXHIBIT I

DECLARATION OF MICHAEL HORTON # P-38483 _____ EXHIBIT J

APPEAL LOG No. PBSP-S-16-02920 _____ EXHIBIT K

APPEAL LOG No. : PBSP-D-16-02228 _____ EXHIBIT L

APPEAL LOG No. : DOA-17-06697 _____ EXHIBIT M

APPEAL LOG No. : PBSP-S-17-00123 _____ EXHIBIT N

DECLARATION OF DARRYL RAY MILLS # A9-7436 _____ EXHIBIT O

APPEAL LOG No. : PBSP-S-17-00361 _____ EXHIBIT P

APPEAL LOG No. : DOA-17-06683 _____ EXHIBIT Q

DECLARATION OF ADRIAN AVILA # E-09918 _____ EXHIBIT R

# EXHIBIT COVER PAGE "A"

HEALTH CARE APPEAL LOG No.: PBSP HC 16029994

II PAGES

STATE OF CALIFORNIA

PELICAN BAY STATE PRISON
UNIT ASU-STAND ALONE

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PATIENT-INMATE HEALTH CARE APPEAL**
CDCR 602 HC (REV. 6/13)

12.9

Page 1 of 2

| STAFF USE ONLY | | |
|---|---|---|
| Emergency Appeal | ☐ Yes   ☒ No | Institution: **PBSP**   HC Log #: HC/16029994   SCH000242   Category: 8/22 |
| Signature: | Date: 10/3/16 | FOR STAFF USE ONLY |

You may appeal any medical, mental health, or dental decision, action, condition, omission, policy or regulation that has a material adverse effect upon your welfare. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Health Care Appeals Coordinator (HCAC) within 30 calendar days of the event that led to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded.                WRITE, PRINT, or TYPE CLEARLY.

| Name (Last, First): VERDUZCO, D | CDCR Number: T-45537 | Unit/Cell Number: A2A 127 | Assignment: |
|---|---|---|---|

State briefly the subject/purpose of your appeal (Example: Medication, To See Specialist, etc.):
DELIBERATE INDIFFERENCE TO PAIN AND SUFFERING ; RETALIATION

**SECTION A.** Explain your issue (If you need more space, use Section A of the CDCR 602-A): I HAVE NOT VIOLATED ANY TIME CONSTRAINTS. I HAVE BEEN IN A (MHCB) SINCE JULY 27, 2016 AND ON PEN RESTRICTION FOR MY OWN SAFETY. I WAS THEN TRANSFERRED TO DEPT. STATE HOSPITAL (DSH) ON 9-14-16 AND CONTINUED ON PEN RESTRICTION UNTIL 9/27/16. ANY DELAY WAS BEYOND MY CONTROL. ON 7/28/16 AT 0100 HRS I GREW MENTALLY DISTRESSED AND OUT OF FEAR AND DESPARATION I PROCEEDED TO CUT MY TONGUE IN HALF DOWN THE CENTER, THROUGH AND THROUGH. I WAS ALSO DEBATING HANGING MYSELF.

**SECTION B.** Action requested (If you need more space, use Section B of the CDCR 602-A):
1) FOR DR. THOMAS TO BE REPORTED TO THE MEDICAL HEALTH BOARD. DR. THOMAS INDIFFERENCE RESULTED IN UNNECESSARY PAIN AND SUFFERING. 2) FOR DR. THOMAS TO BE DISCIPLINED. 3) NOT TO BE FURTHER RETALIATED BY DR. THOMAS DURING MEDICAL EXAMS. 4) TO BE COMPENSATED IN AN AMOUNT DETERMINED BY A JURY.   **OCT 14 2016**

☐ Supporting Documents: Refer to CCR 3084.3.
List supporting documents attached (e.g., Trust Account Statement; CDCR 7410, Comprehensive Accommodation Chrono; CDCR 7362, Request for Health Care Services; etc.):

☒ No, I have not attached any supporting documents. Reason : NOT NECESSARY

| Patient-Inmate Signature: Daniel Verduzco | Date Submitted: 9/29/16 |
|---|---|

☐ By placing my initials in this box, I waive my right to receive an interview.

| SECTION C. FIRST LEVEL - Staff Use Only | Check One: Is CDCR 602-A attached? ☒ Yes ☐ No |
|---|---|
| This appeal has been: | Check One: Is this a recategorized/converted 1824? ☐ Yes ☒ No |

☐ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction):   Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter):   Date: _____
☒ Accepted   Assigned to: CTC SRN II   Title: SRN II   Date Assigned: 10/21/16   Date Due: 12/6/16

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.
Date of Interview: 11/9/16   Interview Location: PBSP PHONE INTERVIEW-CHCF
Your appeal issue is: ☐ Granted ☒ Granted in part ☐ Denied ☐ Other:
See attached letter. If dissatisfied with First Level response, complete Section D.

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Interview conducted? ☒ Yes ☐ No |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions | Interviewer: **SEE ATTACHED**   Title: SRN II |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information | (Print Name) |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | Signature: **SEE ATTACHED**   Date completed: 11/9/16 |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached | (Print Name) |
| ☒ Not Applicable | ☐ Other* | *See chrono/notes | Reviewer: **Dr. Jacobsen, CME** COMPLETED |
| 4. Comments: | **SEE ATTACHED** | | (Print Name)   NOV 22 2016 |
| | | | Signature: _____   1:43 pm   NOV 23 2016 |

| HCAC Use Only | HCAC Use Only |
|---|---|
| Date received by HCAC: | Date closed and mailed/delivered to appellant: |

RECEIVED CHCF OCT 3 2016 HC APPEALS

RECEIVED OCT 14 2016 CEO

EXHIBIT 3 OF VI OCT 21 2016 HC APPEALS

A 3 OF VI DEC 12 2016 HC APPEALS

RECEIVED I CAB FEB 0 1 2017

HC APPEALS

STATE OF CALIFORNIA                                                   DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PATIENT-INMATE HEALTH CARE APPEAL**    PBSP HC16029994
CDCR 602 HC (Rev. 06/13)                   SC16000942                         Page 2 of 2

**SECTION D.** If you are dissatisfied with the First Level response, explain the reason below, attach supporting documents and submit to the Health Care Appeals Coordinator for processing within 30 calendar days of receipt of response. If you need more space, use Section D of the CDCR 602-A.

DISSATISFIED. SEE, SECTION A OF CDCR 602 HC AND CDCR 602-A OF THIS APPEAL. ADDITIONALLY, MEDICALLY NECESSARY MEANS HEALTH CARE SERVICES THAT ARE DETERMINED BY THE ATTENDING PHYSICIAN TO BE REASONABLE AND NECESSARY TO PROTECT LIFE, PREVENT SIGNIFICANT ILLNESS OR DISABILITY, OR "ALLEVIATE SEVERE PAIN" AND SUPPORTED BY HEALTH OUTCOME DATA AS BEING EFFECTIVE MEDICAL CARE, SEE, CCR.3050(b)(1). MY TONGUE WAS COMPLETELY SPLIT IN HALF, I WAS IN SEVERE PAIN NOTHING BUT OVER THE COUNTER TYLENOL

Patient-Inmate Signature: _David Nedujano_           Date Submitted: _DECEMBER 11, 2016_

**SECTION E. SECOND LEVEL - Staff Use Only**      Check One: Is CDCR 602-A attached?  ☒Yes ☐No
This appeal has been:                             Check One: Is this a recategorized/converted 1824? ☐Yes ☐No
☐ Bypassed at Second Level of Review. Go to Section G.
☐ Rejected (See attached letter for instruction):  Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter):                Date: _____
☒ Accepted   Assigned to: ___MSO___   Title: _CEO_   Date Assigned: 12/12/16  Date Due: 1/25/17
Second Level Responder: Complete a Second Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: _N/A_              Interview Location: _N/A_

Your appeal issue is:  ☐ Granted  ☒ Granted in part  ☐ Denied  ☐ Other: _____
See appeal letter.  If dissatisfied with Second Level response, complete Section F.

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Interview conducted? ☐ Yes ☐No |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions | Interviewer: _N/A_   Title: ___ |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information | (Print name) |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | Signature: _N/A_   Date compl___ |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached | Reviewer: **Maureen McLean** |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes | **Chief Executive Officer** Title: |
| 4.Comments:___ | | | Signature: _Maureen McL___  JAN 2 4 2017 |

HCAC Use Only                                      HCAC Use Only
Date received by HCAC:___                          Date closed and mailed/delivered to appellant:___

**SECTION F.** If you are dissatisfied with the Second Level response, explain reason below; attach supporting documents and submit by mail for Third Level Review.  It must be received within 30 calendar days of receipt of prior response.  Mail to: Health Care Appeals, ATTN: Chief, Building C, P.O. Box 588500, Elk Grove, CA 95758.  If you need more space, use Section F of the CDCR 602-A.

DISSATISFIED, SEE SECTION A, SECTION A CONTINUED, SECTION B, SECTION B CONTINUED, SECTION D AND SECTION D CONTINUED OF THIS ____ APPEAL (LOG # PBSP-HC - 16029994).

Patient-Inmate Signature: _David Nedujano_           Date Submitted: _JANUARY 29, 2017_

**SECTION G. THIRD LEVEL - Staff Use Only**
☐ Rejected (See attached letter for instruction):  Date: _____ Date: _____ Date: _____ Date: _____
☐ Cancelled (See attached letter):                Date: _____
☐ Accepted at the Third Level of Review
Your appeal is:  ☐ Granted  ☐ Granted in part  ☒ Denied  ☐ Other: _____
See attached Third Level response.                 Third Level Use Only
                                                   Date closed and mailed/delivered to appellant: ___ APR 27 2017

**Request to Withdraw Appeal:** I request that this appeal be withdrawn from further review because; State reason. (If withdrawal is conditional, list conditions.)

Patient-Inmate Signature: _____   Date Submitted: _____
Printed Name: _____  Title: _____  Signature: _____  Date: ___ CAB APR 27 2017

EXHIBIT "A"  4 OF 11

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (08/09)

**PBSP** HC 16002.9994
SC 16000942

DEPARTMENT OF CORRECTIONS AND REHABILITATION
PELICAN BAY STATE PRISON
UNIT ASU STAND ALONE

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | FOR STAFF USE ONLY | |

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
Appeal is subject to rejection if one row of text per line is exceeded.          WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): VERDUZCO, D | CDC Number: T-45537 | Unit/Cell Number: A2A 127 | Assignment: |
|---|---|---|---|

**A.  Continuation of CDCR 602, Section A only (Explain your issue):** I WAS ADMITTED INTO A (MHCB) AT PRSP FOR
SUICIDE IDEALATION AND SELF-INJURIOUS BEHAVIOR. I WAS IN SEVERE PAIN. I CONTINUED TO PLEAD FOR ADEQUATE PAIN
MEDICATION OR ANYTHING TO NUMB MY TONGUE. I WAS GIVEN OVER THE COUNTER TYLENOL WHICH HAD ZERO EFFECT IN
ALLEVIATING PAIN. I WAS EXAMINED BY DR. THOMAS AROUND 0800 OR 0900 ON 7/28/16. I DESCRIBED MY PAIN LEVEL
AT A 10 AND PLEADED FOR ADEQUATE PAIN MEDICATION AND A NUMBING AGENT TO NUMB MY TONGUE SO I CAN EAT
W/o PAIN AND DISCOMFORT. MY TONGUE WAS COMPLETELY IN HALF ABOUT 1.5 INCHES IN LENGTH. DR. THOMAS DENIED ME ANY
ADEQUATE PAIN MEDICATION, SOFT DIET, OR NUMBING AGENT SO I COULD EAT W/o PAIN OR DISCOMFORT. I BELIEVE DR. THOMAS
WAS RETALIATING AGAINST ME FOR SUBMITTING PRIOR 602'S AGAINST ETC MEDICAL STAFF. ADDITIONALLY, IN SPITE OF A MINOR
SLURRED SPEECH WHEN I SPOKE SINCE I COULDN'T MOVE MY TONGUE BECAUSE IT WAS TOO PAINFUL, DR. THOMAS TOLD ME;
YOU DON'T LOOK LIKE YOUR IN PAIN. DR. THOMAS ALSO TOLD ME, I DID THIS TO MYSELF SO I CAN DEAL W/ THE PAIN AND
DISCOMFORT. I TOLD HER THAT WAS RETALIATION. I HAD TO TRY AND CONSUME MY MEALS IN SEVER PAIN AND DISCOMFORT.
DR. THOMAS INDIFFERENCE TOWARDS MY MEDICAL NEED FALLS BELOW THE LEVEL OF CARE UNDER THE U.S. CONSTITUTION AND
UNDER CCR. 3350 (b)(1) ; 3350 (b) (5), WHICH CONSTITUTE STAFF MISCONDUCT UNDER CCR. 3084 (g). SEE ALSO, CCR.
3084.1 (d). DECLARED ON 7/29/16 AT AROUND 1330 HRS MY TONGUE WAS STITCHED BACK TOGETHER BY THE DENTIST. HE
PRESCRIBED A NUMBING SOLUTION BEFORE ALL MEALS TO NUMB MY TONGUE SO I CAN EAT WITHOUT PAIN OR
DISCOMFORT WHICH PROVES DR. THOMAS ACTED W/ DELIBERATE INDIFFERENCE TO RETALIATE AGAINST ME FOR FILING HC
APPEAL LOG # SC 16000897. **OCT 14 2016**

Inmate/Parolee Signature: _Daniel Verduzco_          Date Submitted: SEP 29TH 2016

**B.  Continuation of CDCR 602, Section B only (Action requested):**

Inmate/Parolee Signature: _____     EXHIBIT "A"   5 OF 11     Date Submitted: _____

STATE OF CALIFORNIA Case 4:18-cv-04596-JSW   Document 1   Filed 07/30/18   Page 24 of 31 DEPARTMENT OF CORRECTIONS AND REHABILITATION

INMATE/PAROLEE APPEAL FORM ATTACHMENT

CDCR 602-A (08/09)                                                                                                         Side

**PBSP** HCI6029994
~~SCI6000942~~

D. Continuation of CDCR 602, Section D only (Dissatisfied with First Level response): _WAS GIVEN TO ME BY DOCTOR THOMAS . HOW IS_

_THAT NOT CRUEL AND UNUSUAL PUNISHMENT ? AFTER TWO DAYS DENTIST WILMER HECHANOVA FINALLY GAVE ME A NUMBING AGENT._

DEC 1 2 2016

Inmate/Parolee Signature: _Donnell Verdusro_                                        Date Submitted: _DECEMBER 11, 2016_

F. Continuation of CDCR 602, Section F only (Dissatisfied with Second Level response): _____

Inmate/Parolee Signature: _____   _EXHIBIT "A" 6 OF 11_   Date Submitted: _____

RECEIVED
OFFICE OF
OCT 3 2016
APPEALS



# CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



**Institution Response for Second Level Health Care Appeal**
**Pelican Bay State Prison (PBSP)**

**To:**  **VERDUZCO, D. (T45537)**



**Tracking/Log #:**  **PBSP HC 16029994**

**Appeal Decision:**  **PARTIALLY GRANTED**

**Appeal Issues:** You filed a CDCR 602-HC, *Patient-Inmate Health Care Appeal,* on October 14, 2016, pertaining to an injury you sustained to your tongue on July 28, 2016. You request the following actions.
1) Dr. Thomas to be reported to the medical board;
2) Dr. Thomas to be disciplined;
3) To not to be further retaliated by Dr. Thomas during medical exams;
4) To be compensated in an amount determined by a jury.

**Dissatisfied with the First Level Response, you submitted a Second Level Appeal:** You quote California Coder of Regulations Title 15 Sec. 3050 (b) (1): medically necessary means health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or "alleviate severe pain" and supported by health outcome data as being effective medical care. You report your tongue was completely split in half, you were in severe pain and received {sic} nothing but over the counter Tylenol.

**The Second Level Appeal review is: Partially granted.**
1) Denied; <u>this appeal was reviewed and evaluated by the Hiring Authority and the issues were deemed not to meet the Staff Complaint criteria.</u> You may submit a complaint to the Medical Board. The request for administrative action regarding medical staff is beyond the scope of the appeals process.
2) Denied; <u>this appeal was reviewed and evaluated by the Hiring Authority and the issues were deemed not to meet the Staff Complaint criteria.</u> Although you have the right to submit an appeal as a staff complaint, the request for administrative action regarding staff is beyond the scope of the appeals process. There is no evidence to support your claim of misconduct by health care staff.
3) Partially granted; California Code of Regulations (CCR), Title 15, Section 3084.1(d), Right to Appeal states: *No reprisal shall be taken against an inmate or parolee for filing an appeal. This shall not prohibit appeal restrictions against an inmate or parolee abusing the appeal process* as defined in section 3084.4.
4) Denied; monetary compensation is outside the scope of the correspondence/appeal process. You have the right to contact the Department of General Services (DGS), Office of Risk & Insurance Management, Government Claims Program, P.O. Box 989052 MS – 414, West Sacramento, CA 95798-9052. Prior to contacting DGS, you have the responsibility to exhaust all administrative remedies as stated in the Prison Litigation Reform Act (42 U.S.C § 1997e[a]): "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

*EXHIBIT 'A'  7 OF 11*

Pursuant to the California Code of Regulations, Title 15, Section 3350(a), *Provision of Medical Care and Definitions, the department shall only provide medical services for inmates, which are based on medical necessity and supported by outcome data as effective medical care.*

You may submit a CDC 7362, *Health Care Services Request Form* to your medical clinic for any health concerns you may have.

**Effective Communication:**   The attached Effective Communication Form indicates which accommodations were used to ensure effective communication.

**Appeal Decision:**  A thorough review of your request presented in this complaint has been completed at the second level and is **partially granted.**

MAUREEN MCLEAN
Chief Executive Officer

Date  1/23/17

ml



EXHIBIT 'A"   8 OF II



CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES



### Institution Response for <u>First</u> Level Health Care Appeal
### Pelican Bay State Prison (PBSP)

**To:**  **VERDUZCO, D. (T-45537)**

PELICAN BAY STATE PRISON
UNIT ASU-STAND ALONE

**Tracking/Log #:  PBSP HC 16029994**

**Appeal Decision:** **PARTIALLY GRANTED**

**Appeal Issues:** You filed a CDCR 602-HC, *Patient-Inmate Health Care Appeal,* on October 21, 2016.
1) You are requesting for Dr. Thomas to be reported to the medical board.
2) You are requesting for Dr. Thomas to be disciplined.
3) You are requesting not to be further retaliated by Dr. Thomas during medical exams.
4) You are requesting to be compensated in an amount determined by a jury.

**Interview:** You were interviewed for this appeal November 9, 2016, via telephone, by S. Yeboah, Supervising Registered Nurse II.

**The First Level Appeal review is:**
1) Denied; <u>**this appeal was reviewed and evaluated by the Hiring Authority and the issues were deemed not to meet the Staff Complaint criteria.**</u> Although you have the right to submit an appeal as a staff complaint, the request for administrative action regarding staff is beyond the scope of the appeals process. There is no evidence to support your claim that you are being denied adequate medical care or that health care staff is being **deliberately indifferent** to your medical needs.
2) Denied; <u>**this appeal was reviewed and evaluated by the Hiring Authority and the issues were deemed not to meet the Staff Complaint criteria.**</u> Although you have the right to submit an appeal as a staff complaint, the request for administrative action regarding staff is beyond the scope of the appeals process. There is no evidence to support your claim of misconduct by health care staff.
3) Partially granted; California Code of Regulations (CCR), Title 15, Section 3084.1(d), Right to Appeal states: *No reprisal shall be taken against an inmate or parolee for filing an appeal. This shall not prohibit appeal restrictions against an inmate or parolee abusing the appeal process* as defined in section 3084.4.
4) Denied; monetary compensation is outside the scope of the correspondence/appeal process. You have the right to contact the Department of General Services (DGS), Office of Risk & Insurance Management, Government Claims Program, P.O. Box 989052 MS – 414, West Sacramento, CA 95798-9052. Prior to contacting DGS, you have the responsibility to exhaust all administrative remedies as stated in the Prison Litigation Reform Act (42 U.S.C § 1997e[a]): "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

As you are no longer housed at PBSP, if you have any medical concerns, you are encouraged to submit a CDC 7362, *Health Care Services Request Form,* to your current medical clinic.

**Effective Communication:** The attached Effective Communication Form indicates which accommodations were used to ensure effective communication.

*EXHIBIT "A" 9 OF 11*

RECEIVED
I CAB
FEB 0 1 2017
HC APPEALS

**Appeal Decision:** A thorough review of your request presented in this complaint has been completed at the first level and is **partially granted.**

PELICAN BAY STATE PRISON
UNIT ASU-STAND ALONE

D. JACOBSEN, D.O.
Chief Medical Executive

NOV 22 2016
Date

1:42 pm
Time

Id

EXHIBIT "A" 10 OF 11

RECEIVED
I CAB
FEB 0 1 2017
HC APPEALS

VERDUZCO, T-45537, PBSP HC 16029994

Page 2 of 2

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION                    PELICAN BAY STATE PRISON

## APPEALS EFFECTIVE COMMUNICATION CONFIRMATION

| INMATE NAME | CDCR # | HOUSING | APPEAL LOG# | TABE |
|---|---|---|---|---|
| VERDUZCO, D. | T45537 | CHCF | PBSP HC 16029994 | 12.9 |

### A.  DOES THIS INMATE HAVE DISABILITIES OR COMMUNICATION ISSUES?

1. **Disability Code:**
   - ☐ TABE score 4.0 or lower, or no listed score
   - ☐ DPH      ☐ DNH      ☐ DPS      ☐ DNS
   - ☐ DPV      ☐ LD       ☐ DDP      ☐ SL Interpreter needed
   - ☒ N/A, no communication issues identified per DECS review      ☐ Language Interpreter needed

### *STOP! IF N/A CHECKED ABOVE, SIGN & DATE BOTTOM OF SECTION B.*

### B.  APPEAL INTERVIEW

1. **Accommodation:**
   - ☒ Additional time      ☐ Equipment      ☐ SLI      ☐ Transcribe
   - ☐ Louder      ☐ Slower      ☒ Basic      ☐ Other*
   - ☐ SL Interpreter used; Name: _____      ☐ Language Interpreter used; Name: _____
2. **Effective Communication:**
   - ☒ I/P asked questions      ☒ I/P summed information
   - **Please check one:**
   - ☐ Not reached*      ☒ Reached      *See Chrono/Comments          Phone interview
   - *Comments:

   S. Yeboah, SRN II _____ _____ 11/9/16
   Printed Name & Title                    Signature                        Date

### *STOP! DO NOT FILL OUT SECTION C OR D UNLESS PROVIDING ASSISTANCE WITH COMPLETED RESPONSE AS DIRECTED BY THE APPEALS OFFICE.*

### C.  APPEAL RESPONSE – FIRST LEVEL

1. **Accommodation:**
   - ☐ Additional time      ☐ Equipment      ☐ SLI      ☐ Transcribe
   - ☐ Louder      ☐ Slower      ☐ Basic      ☐ Other*
   - ☐ SL Interpreter used; Name: _____      ☐ Language Interpreter used; Name: _____
2. **Effective Communication:**
   - ☐ I/P asked questions      ☐ I/P summed information
   - **Please check one:**
   - ☐ Not reached*      ☐ Reached      *See Chrono/Comments
   - *Comments:

   _____ _____ _____
   Printed Name & Title                    Signature                        Date

### D.  APPEAL RESPONSE – SECOND LEVEL

1. **Accommodation:**
   - ☐ Additional time      ☐ Equipment      ☐ SLI      ☐ Transcribe
   - ☐ Louder      ☐ Slower      ☐ Basic      ☐ Other*
   - ☐ SL Interpreter used; Name: _____      ☐ Language Interpreter used; Name: _____
2. **Effective Communication:**
   - ☐ I/P asked questions      ☐ I/P summed information
   - **Please check one:**
   - ☐ Not reached*      ☐ Reached      *See Chrono/Comments
   - *Comments:

   EXHIBIT "A"   II OF II _____ _____
   Printed Name & Title                    Signature                        Date

RECEIVED I CAB FEB 0 1 2017 HC APPEALS

PBSP 07/2015

 CALIFORNIA CORRECTIONAL
# HEALTH CARE SERVICES


**Date:** APR 2 7 2017

**To:** VERDUZCO, DANIEL (T45537)
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

**From:** California Correctional Health Care Services
Inmate Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking/Log # :**   PBSP HC 16029994

This appeal was reviewed by Inmate Correspondence and Appeals Branch staff on behalf of the Deputy Director, Policy and Risk Management Services.  All submitted information has been considered.

## DIRECTOR'S LEVEL DECISION:

Appeal is denied.  This decision exhausts your administrative remedies.

## APPEAL REQUESTS:

You are requesting:
- For Dr. Thomas to be reported to the medical board.
- For Dr. Thomas to be disciplined.
- Not to be further retaliated by Dr. Thomas during medical examinations.
- Monetary compensation in an amount to be determined by a jury.

## BASIS FOR DIRECTOR'S LEVEL DECISION:

Your appeal file and documents obtained from your Unit Health Record were reviewed by licensed clinical staff. These records indicate:
- California Correctional Health Care Services takes your complaint against any personnel seriously and all efforts are made to ensure these matters are researched and responded to accordingly.  However, it is not in the purview of appellants to request specific action to be taken in regard to the conduct of the health care appeal review or in regard to disciplinary or adverse action against staff.  Further, all such personnel actions are confidential and will not be shared with inmates, staff, or the public.  The health care appeal was reviewed and evaluated by the hiring authority and the issue was deemed not to meet staff complaint criteria.
- You have received primary care provider and dental evaluation and monitoring for your history of self-inflicted tongue laceration on July 28, 2016.
- The primary care provider and dentist completed assessments, noted review of your history and current symptoms, and developed a plan of care including suturing repair of tongue laceration, education regarding post-operative pain, and orders for the medications acetaminophen and lidocaine mouth rinse to decrease discomfort.

Your medical condition will continue to be monitored with care provided as determined medically indicated by the primary care provider.  If you have additional health care needs, you are advised to utilize the CDC 7362, Health Care Services Request Form, process to access health care services in accordance with California Correctional Health Care Services policy.

---

California Correctional Health Care Services health care providers are trained and capable of providing care for patients with pain. California Correctional Health Care Services Pain Management Guidelines were adopted to standardize the effective assessment, treatment, and management of patients with acute and chronic pain.

Monetary compensation is outside the jurisdiction of the health care appeals process.

Per California Code of Regulations, Title 15, Section 3084.1(d), "No reprisal shall be taken against an inmate or parolee for filing an appeal. This shall not prohibit appeal restrictions against an inmate or parolee abusing the appeal process as defined in Section 3084.4, nor shall it prohibit the pursuit of disciplinary sanctions for violation of department rules."

While the health care appeals process is an administrative means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

After review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary.

## RULES AND REGULATIONS:
The rules governing these issues are: California Code of Regulations, Title 15; Inmate Medical Services Policies and Procedures; Inmate Dental Services Program Policies and Procedures; and the Department Operations Manual.

## ORDER:
No changes or modifications are required by the institution.

J. Lewis, Deputy Director
Policy and Risk Management Services
California Correctional Health Care Services